## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

**JOHN DOE,**
     **Plaintiff,**

**v.**                                              **Case No. _____**

**THE SAVANNAH COLLEGE OF**
**ART AND DESIGN, INC., LINDSEY**
**BEACHWOOD, in her**
**capacity as Deputy Title IX Coordinator,**
**DAVID BLAKE, in his**
**capacity as Hearing Officer and**
**Dean of Students, AND**
**BRAD GRANT, in his**
**capacity as Sanctioning Officer**
     **Defendant.**

---

## COMPLAINT AND MOTION TO PROCEED ANONYMOUSLY

COMES NOW, John Doe, by and through his counsel in the above captioned

matter and files his complaint against Defendant The Savannah College of Art and

Design, Inc. ("SCAD") related to his sanctions from SCAD for erroneous outcome

of a Title IX complaint against him, alleging Defendant's violated Plaintiff's rights

under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681,

*et seq*.; violated Plaintiff's rights to equal protection under the laws of the Fourteenth

Amendment to the U.S. Constitution; violated Plaintiff's federal rights under Title

IX, pursuant to 42 U.S.C. § 1983; violations of  Title VI of the Civil Rights Act of

1964, 42 U.S.C. § 2000d, et seq.; breach of the student-college contract; breach of

the covenant of good faith and fair dealing; engaged in gender discrimination that violated his entitlement to equal rights under the law, 42 U.S.C. § 1981; and injured him through negligent acts or omissions.

## **PARTIES**

1. Plaintiff is a resident of Mecklenburg County, North Carolina.

2. Plaintiff resides in Savannah, Chatham County, Georgia when attending SCAD as a student.

3. Defendant SCAD is a recipient of federal funds within the meaning of U.S.C. § 1681, *et seq*., Defendant's primary place of business in Savannah, Chatham County, Georgia.

4. Defendant SCAD is incorporated in Georgia, regularly conducts business in Savannah and Atlanta, and has a principal place of business in Savannah and Atlanta. Service of process may be had upon Defendant SCAD via registered agent to Hannah Yi Flower, 1600 Peachtree St. NW, Atlanta, GA 30309-2403.

5. Upon information and belief, Defendant Lindsey Beechwood ("Title IX Coordinator") is employed by SCAD as the Title IX Coordinator. Service of process may be had upon Defendant Beechwood at Keys Hall, 516 Abercorn St, Savannah, GA 31401.

6.  Upon information and belief, Defendant David Blake ("Hearing Officer") is employed by SCAD as the Dean of Students. Service of process may be had upon Defendant Blake at Keys Hall, 516 Abercorn St, Savannah, GA 31401.

7.  Upon information and belief, Defendant Brad Grant ("Sanction Officer") is employed by SCAD as the Sr. VP of Technology and Development. Service of process may be had upon Defendant Grant at Keys Hall, 516 Abercorn St, Savannah, GA 31401.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves federal law, specifically claims made under Title IX, 20 U.S.C. § 1681 et. seq., and claims for deprivation of civil rights under the U.S. Constitution pursuant to 42 U.S.C. § 1983.

9.  This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) and (4) because Plaintiff seeks redress and damages for deprivation of civil and federal rights under 42 U.S.C. § 1983.

10. This Court has personal jurisdiction over Defendant pursuant to Federal Rules of Civil Procedure 4(k)(1) because Defendant is located and regularly conducts business in this jurisdiction and because the conduct giving rise to this cause of action occurred in this Judicial District.

11.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is located within the Judicial District and the events and omissions giving rise to this Complaint occurred in this District.

## MOTION TO FILE UNDER PSEUDONYM

12.  Plaintiff is a student at SCAD in his final semester.

13.  Plaintiff is of legal age.

14.  However, the following reasons exist to file this action under pseudonym:

15.  This case involves allegations of sexual assault and rape, as defined by Defendant.

16.  The case involves allegations of highly sensitive and personal subjects

17.  There is a risk of physical and/or mental harm to plaintiff, the complainant in the underlying Title IX action, and innocent parties

18.  There is a risk of retaliation

19.  Plaintiff risks prosecution and civil action by bringing this Title IX action before this Court if the claims against him are upheld by Defendant

20.  Disclosures by Plaintiff of information of the utmost intimacy related to a sexual relationship and subsequent allegation of sexual assault

21.  There is no possible prejudice to defendant by Plaintiff's use of pseudonym (Defendant should welcome the granting of this request in an effort to protect its students)

22.  Less drastic means of preserving Plaintiff's interest are not available

23.  The administrative actions in this case are ongoing, with an emergency motion for temporary restraining order and preliminary injunction being filed concurrent with this complaint

24.  A Motion to Seal Evidence is being filed concurrent with this Complaint. The evidence contains affidavit by the Plaintiff and two documents which list the Plaintiff's actual name. Thus, if the Motion to Seal is granted by the Court, the court will have opportunity to review information with the Plaintiff's legal name.

## **FACTUAL ALLEGATIONS**

25.  Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

26.  Plaintiff is a student at SCAD in his final few classes of study. He brings this civil rights action based on erroneous outcome of a Title IX complaint conducted by Defendant following an allegation of sexual assault by another student, Jane Roe, against Plaintiff.

27.  On August 23, 2022, Plaintiff received notice that a Title IX complaint had been filed against him by another SCAD student, Complainant Jane Roe ("Complainant" or "Roe"), alleging that during a consensual sexual encounter with plaintiff eleven months earlier, in September 2021, Roe withdrew consent

by saying "stop." Roe further alleged that Plaintiff sexually assaulted her by not "immediately" withdrawing his penis, which was already inside of her.

28. It took Plaintiff approximately 2-5 seconds to hear the word "stop," distinguish it from the dirty talk which was a consensual part of their sexual relationship (this was the third time they had sex), cognitively register the word in the dark with no visual or other cues, withdraw his penis from her vagina, and move to the complete opposite side of the room.

29. Plaintiff then dressed and prepared to leave., left, and walked home.

30. While doing so, Complainant asked Doe to stay and talk.

31. Plaintiff declined to stay because she revoked consent and said stop. He left her residence and walked home.

32. Text messages were exchanged between Complainant and Doe while he was walking home. It was not until Doe refused to return to Complainant's residence and her friends arrived at her house that Complainant began using the terms sexual assault and rape.

33. On background, Complainant and Doe had been friends for approximately one year prior to this encounter.

34. On or about August or September 2021, Doe and Complainant decided to engage in a sexual relationship.

35.   Complainant had a boyfriend at the time and asked Doe if they could be "sneaky links," meaning not be public with the sexual relationship because Complainant did not want her boyfriend to find out.

36.   The subject incident in this case was their third sexual encounter. On the previous night, they had sexual intercourse twice.

37.   An investigation was conducted by SCAD in accordance with their Sexual Misconduct Policy and Grievance Process for the Sexual Misconduct Policy.

38.   The draft Investigation Report and evidence were provided to the Complainant and the Respondent on October 24, 2022 at approximately 12:39 p.m.

39.   The draft investigation report and evidence were provided in a digital format, heavily watermarked and difficult to view, and unable to be accessed by another Title IX attorney in Plaintiff's counsel's law firm.

40.   The draft investigation report and evidence were available only until 11:59 p.m. on Nov. 3, 2022 (10 days).

41.   On Friday, Oct. 28, 2022 at 1:34 p.m., Brandy Mai ("Mai") an attorney in Plaintiff's counsel's ("counsel") law firm sent an email to the SCAD Title IX Coordinator ("Coordinator") stating that she was unable to access the digital file using counsel's credentials, asking to be given access to the files as a member of the law firm, and requesting insight on how best to download and/or print the documents for review.

42.    On Monday, Oct. 31, 2022 at 3:56 p.m., a full seventy-two (72) hours later, yielding three days of lost time for accessing files with only had ten (10) days for reviewing them, the Title IX Coordinator finally replied directly to counsel (not Mai, the attorney who made the request) stating:

> *For the sake of consistency and equity in our process, our office must restrict our communications solely to the Advisor of a Party. Therefore, we are not able to correspond with [attorney] about any matters related to the investigation or [Doe]'s educational record. As noted in the invitation to the Box folder you received, the draft investigative report is "preview only" and cannot be printed. We restrict downloading in order to protect the privacy of those involved in the investigation and to prevent documentation from being copied, reproduced, forwarded, etc. by recipients.*

43.    The following morning, Plaintiff's counsel emailed the Title IX Coordinator with an explicit request that access be granted to Mai.

> *While I fully understand the printing restrictions I would ASK that access be granted to Brandy. She is the other Attorney in my office and is working collaboratively with me on this case. This would facilitate us being to fully able to discuss this document as I'm sure you will appreciate.*

44.    SCAD denied this request.

45.    Access to the draft investigative report and evidence ceased, as scheduled, on Nov. 3, 2022 at 11:59 p.m.

46.    The Complainant nor the Respondent provided a response to the draft Investigation Report and evidence.

47.   The Investigator submitted the final Investigation Report to the Title IX Coordinator(s) on November 17, 2022.

48.   The final report was shared with the Parties and their Advisors on November 22, 2022.

49.   Pre-hearing meetings with the Parties and witnesses to review the process and answer questions were held with the Deputy Coordinator from December 1 to 9, 2022.

50.   The live hearing into the Complaint was held on December 12, 2022.

51.   The Hearing Officer and Sanctions Officer were not qualified under Title IX, nor even Defendant SCAD's own policies, to conduct these proceedings.

52.   The expertise of the Hearing Officer and Sanctions Officer does not include – nor anywhere near it –  Title IX, investigations, law enforcement, forensic science, or alcohol science.[1]

53.   Plaintiff's counsel did not have access to the evidence at the hearing and had to rely on his memory of the investigative file from thirty-nine (39) days prior, because of SCAD's "disappearing ink" policy.

---

[1] The Hearing Officer made conclusory findings regarding behaviors and intoxication levels against Plaintiff. Regarding Complainant, the Hearing Officer stated she was not intoxicated despite her own testimony to the contrary and evidence showing that Plaintiff had indeed bought her alcohol prior to the incident.

54.   Plaintiff was not afforded an opportunity to speak about sanctions at the live hearing, nor before the individual tasked with determining and imposing the sanctions.

55.   The Dean of Students, Defendant David Blake, presided over the live hearing as the Hearing Officer.

56.   Blake's loyalties and ethical obligations to SCAD based on his stature, position, and job duties created an institutional bias against Plaintiff.[2]

57.   During questioning by Plaintiff's advisor-attorney, Complainant Roe volunteered that she had been seeking psychological counselling both after and before the events of Sept. 2021. Doe's advisor-attorney attempted to ask follow-up questions once Complainant volunteered this information (e.g., was there a change in treatment from before the incident to after; whether she had a history of sexual trauma that could have been triggered by her sexual encounter with Doe), but the Hearing Officer refused to allow these questions to be asked or to ask any questions regarding past or present trauma.

58.   Plaintiff's advisor-attorney was not allowed to ask Complainant about the timeline of events that evening. Discrepancies existed between Complainant

---

[2] In considering the totality of the circumstances of this case, each individual decision by Defendants nearly always protected Defendant SCAD, not the students, or provided SCAD with what would be favorable optics or Title IX reporting information.

and Doe's timelines and the text message evidence provided by Doe. Inability to ask questions related to this greatly disadvantaged Plaintiff. The most significant ways this disadvantaged Plaintiff was:

    a. it denied him the opportunity to lay any foundation upon which to refute Complainant's discrepancies;

    b. he was denied the opportunity to refute her testimony;

    c. it removed "live questioning of the accuser in front of the fact finder" from the proceedings on the part of the case that was at issue.[3]

59.    On Dec. 27, 2022, two days after Christmas, SCAD issued their Hearing Officer Decision and Sanctioning Officer Decision via email from the Title IX Coordinator. The decisions were attached as pdf files to the email, and curiously were not behind the digital format that had previously been used.

60.    The following sanctions were received by Plaintiff:

    a. Suspension with reenrollment to resume no sooner than fall 2023;

    b. Respondent must submit proof of completion of personal decision-making education prior to re-enrollment;

    c. Respondent must submit 1,000 word minimum essay regarding Informed consent" (with citations) prior to reenrollment; and

    d. No Contact Order" (NCO) remains in effect indefinitely.

---

[3] *See generally*, erroneous outcomes in Title IX cases

61. The email stated that Plaintiff had three (3) days to appeal the determination regarding responsibility.

62. Plaintiff's counsel emailed the Coordinator and stated that the quick turnaround, especially during a holiday week, was highly inconvenient, that counsel was on leave for the holidays and unable to access his computer. Further, there's no way to file leave of court in Title IX cases.

63. In order to complete the appeal within SCAD's 72-hour window, Mai emailed the Coordinator asking for access to a recording/transcript of the Dec. 12, 2022 hearing and the investigative case file.

64. The Coordinator responded directly to Counsel (not Mai, again) stating that access could only be granted to one (1) advisor.

65. Counsel responded with a request for access to be granted to Mai since counsel was on leave, not able to access a computer, and that the term 'one advisor' can mean 'one law firm.'

66. The Coordinator responded with an acknowledgment that even though counsel was experiencing "operational challenges," access could only be granted to one (1) advisor.

67. Further, Coordinator suggested that Plaintiff could change his advisor to Mai if she needed access, but that in doing so, counsel would be removed as his advisor.

68.  The files were again in a format that could not be downloaded, saved, or printed.

69.  Access to the files ended at 11:59 p.m. on Jan. 5, 2023.

70.  Sanctions will begin at the 10-day conclusion of SCAD's appeal review, which is scheduled to begin on or about Jan. 16, 2023.

71.  Administrative remedies regarding the Hearing Officer Decision (findings), could not be fairly or properly exhausted.

72.  No administrative remedies exist regarding the Sanctioning Officer Decision, and further, no hearing nor opportunity to be heard was offered or contemplated as to the sanctions themselves, which were not addressed or considered on the hearing on responsibility. Further, no evidence was permitted as to mitigation. Thus, injunctive relief (included as attachments to this Complaint) is needed to stop the appeal.

73.  No adequate remedy or remedies at law exist.

## **VIOLATIONS**

### COUNT I

### Gender Discrimination & Discriminatory Patterns Of Decision Making

74.  Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

75. 34 CFR § 106.45(a) states that "treatment of a **Complainant** or a **Respondent** in response to a **formal complaint** of **sexual harassment** may constitute discrimination on the basis of sex under **Title IX**."

76. Part (b) furthers that any provisions, rules, or practices . . . that a recipient adopts as part of its grievance process for handling formal complaints of sexual harassment must apply equally to both parties.

77. SCAD's sexual harassment rules and processes fall under two documents: Sexual Misconduct Policy and Grievance Process.

78. The analysis used by SCAD to fully analyze consent did not equally apply to Plaintiff, nor was it painstaking or step-by-step.[4]

79. The Hearing Officer's Decision provided weight, analysis, and credibility to Complainant's version of events, but the same weight, analysis, and credibility to Plaintiff's version of events was not given.

80. The Hearing Officer's decision contained extensive patterns of discriminatory decision-making.

81. Discrimination further occurred when the Title IX Coordinator, at various stages in this case, either intentionally and/or with reckless or deliberate indifference, caused delays which were unfavorable to Plaintiff.

82. All errors and discrepancies committed by SCAD were favorable only to the

---

[4] Matter of Jaconbson v. Blaise, *et al.*

Complainant.

83. Discrimination and bias by Defendant further occurred when making Plaintiff and his advisor-attorneys participate in a live hearing *without* access to the investigation file.

84. Discrimination and bias by Defendant in this case extended to Plaintiff's advisor/attorney with repeated requests being denied for things needed to mount a proper defense, fairly conduct a live hearing, or submit an adequate appeal.

85. SCAD formulated a belief that Plaintiff was guilty and invoked anti-male gendered stereotypes throughout the Title IX process, including the Hearing Officer and Sanctioning Officer decisions.

86. This bias, and the subsequent feeling of not having equal treatment or a chance to overcome the bias, has caused Plaintiff to experience severe anxiety and depression.

87. The severe, pervasive, and objectively offensive actions of Defendant – and Plaintiff's subsequent anxiety and depression -- has deprived Plaintiff of access to educational opportunities and benefits provided by the school.

## COUNT II

**Erroneous Outcome, Breach Of Contract, Breach of Covenant of Good Faith and Fair Dealing**

88.   Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

89.   As a recipient of federal financial funding, SCAD is required to implement and administer a Grievance Policy to receive, investigate, and respond to reports of sexual harassment and discrimination against students.

90.   The Title IX Coordinator must review the policy for compliance under Title IX.

91.   The Title IX Coordinator is responsible for coordinating the Grievance Policy and ensuring individual complaints are handled equitably and properly.

92.   Upon information and belief, at all times relevant hereto, Defendant SCAD did not ensure that the complaint, investigation, and administration of their Sexual Misconduct Policy and Grievance Process were handled properly or without bias.

93.   Defendants failed to provide Plaintiff a meaningful opportunity to participate in the Title IX process.

94.   Defendants breached Title IX and  contractual obligations by:

   a.  Purposefully prohibiting Plaintiff from engaging in the Title IX process;

   b.  Denying access to investigation files during the live hearing;

   c.  Denying access to investigation files to an additional attorney in Plaintiff's attorney-advisor's law firm;

d.  Failing to provide investigation files in an accessible format that could be printed, saved, or downloaded;

e.  Failing to engage proper forensic, medical, or other outside experts when interpreting information that is not within common knowledge;

f.  Not providing the same interpretation or analysis for Plaintiff's information as they conducted for Complainant's, especially for information that was not common knowledge;

g.  Not allowing Plaintiff to be heard on the issue of sanctions by the person tasked with evaluating and issuing the sanctions against him

h.  Failing to allow Plaintiff's advisor to ask Complainant about a timeline of events at the live hearing

i.  Failing to allow Plaintiff's advisor to ask Complainant additional questions about her medical/psychological history, even though Complainant voluntarily offered some information

j.  Failing to consider the mitigating factors that had been in place for more than a year prior to issuing sanctions and that had not ever been violated by Plaintiff

k.  Failure to conduct a safety/risk assessment

l.  Failing to accurately collect and report the statements and information provided during the Title IX process

m. Failing to provide the same weight, credibility, and analysis to Plaintiff's information as was provided to Complainant

n. Failure to account for the numerous discrepancies in Complainant's statements, or to refute statements by looking at the evidence

o. Failure to properly apply Plaintiff's evidence to the investigation

p. Creating a bifurcated process between the investigation and the sanctions

95. Defendants' failure to properly investigate a complaint under the Sexual Misconduct Policy and Grievance Process effectively denied John Doe's clearly established federal, Constitutional, and contractual rights.

96. As a direct and proximate result of Defendants' actions, and inactions, John Doe suffered, and continues to suffer, injuries including, but not limited to emotional distress, psychological trauma, and mortification.

97. There are sufficient facts to cast doubt on the accuracy of the outcome.

98. Patterns of decision-making by Defendant throughout the entire process in this Title IX case clearly establish a connection between the erroneous outcome and the bias and discrimination, which is due to gender discrimination against Plaintiff in violation of  34 CFR § 106.45(a), as well as any and all items alleged in Count I above.

## **COUNT III**

## Disparate Treatment And Impact

99.    Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

100.   Plaintiff is a member of a class of persons that Title IX was designed to represent and protect.

101.   SCAD knew of Plaintiff's gender.

102.   Because of Plaintiff's gender, and the gender discrimination against him under 34 CFR § 106.45(a) and other allegations listed in this Complaint, Defendant treated Plaintiff differently on the basis of his sex.

103.    No matter the motivation or justification for such distinctions, the sex- and gender-based distinctions in Defendant's handling of these Title IX claims by were unjustified.

104.   The factual background, sequence of events, and departures from Defendant's own policies and processes as listed above are circumstantial evidence of the discriminatory intent.[5]

105.   In repeated correspondences, Defendant explained their reasoning as needing to maintain consistency or needing to follow policy or procedure.

---

[5] Direct evidence is often unavailable. Additionally, in this case, since Defendant has provided zero evidence for Plaintiff to keep, there is no evidence to provide at all.

106. As such, this disparate treatment was more than the mere occurrence of isolated, accidental, or sporadic discriminatory acts – this is Defendant's standard operating procedure.

107. Moreover, it can be presumed that every male student who has been party to a Title IX case while attending SCAD has been victim to Defendant's discriminatory policies.

108. Because every male student who has been the subject of a Title IX allegation while attending SCAD has been victim to Defendant's discriminatory policies, then the converse is also true: SCAD treats members of the opposite sex different when they are a party in a Title IX case while attending SCAD

109. Even if Defendant's policies, processes, and practices are neutral on their face, the Defendant's policies, processes, and practices have disparate impacts on protected individuals.

110. Such policies, processes, and practices have no substantial legitimate justification.

111. There is no important educational goal or necessity that makes Defendant's disparate and discriminatory policies, processes, and practices demonstrably necessary when conducting Title IX investigations.

112. As such, the severity of the sanctions in this case can be reasonably said to be affected by Plaintiff's gender.

## COUNT IV

### Hostile Environment

113.  Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

114.  Plaintiff was a student at SCAD, which receives federal funds.

115.  Plaintiff was subjected to discrimination and harassment based on his sex.

116.  The harassment was sufficiently pervasive and severe as to affect his educational program and activities.

117.  SCAD is, was, and has been deliberately indifferent to the sexual harassment and discrimination of Plaintiff and, in fact, has been the cause of it.

118.  The harassment and discrimination is, was, and has been objectively offensive to Plaintiff and his advisor-attorney.

119.  The offensive behavior has deprived Plaintiff of the opportunities and/or benefits of Title IX policies and processes provided by SCAD.

120.  The Title IX Coordinator, Hearing Officer (who is the Dean of Students), and Sanctions Officer (collectively, "Title IX team") had actual knowledge of this discriminatory behavior, as they were the ones behaving in this manner.

121.  The Title IX Coordinator, Hearing Officer (who is the Dean of Students), and Sanctions Officer had authority and opportunity to address the discrimination.

122.  The Title IX Coordinator, Hearing Officer (who is the Dean of Students), and Sanctions Officer had authority and opportunity to take corrective action measures.

123.  The Title IX Coordinator, Hearing Officer (who is the Dean of Students), and Sanctions Officer failed to adequately respond to the discrimination.

124.  The behaviors, individually and/or in tandem, of the Title IX team were clearly unreasonable in light of the circumstances.

125.  The deliberately indifferent behaviors by the Title IX team, individually and/or in tandem, caused Plaintiff to face further sexual harassment and discrimination by other members of the Title IX team.

126.  Defendants' actions, or inactions, created a climate in which sexual harassment and discrimination against Plaintiff (and other students) is tolerated.

127.  The deliberate indifference by the Title IX team has caused Plaintiff to become vulnerable to criminal charges and civil lawsuits.

128.   Minimal plausible inferences of discriminatory intent exist in SCAD's handling of Plaintiff's Title IX case.

## COUNT V

### Negligence

129.  Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

130. SCAD owed a special duty to Plaintiff.

131. SCAD owed a contractual duty to Plaintiff.

132. SCAD did not act with basic fairness or any minimum level of fair play.

133. SCAD breached their duty to Plaintiff by mishandling his Title IX investigation, failing to provide him meaningful opportunities to participate, and breaching the institution-student contract.

134. As a direct and proximate result of Defendants' actions, and inactions, John Doe suffered, and continues to suffer, injuries including, but not limited to emotional distress, psychological trauma, and mortification.

135. SCAD had an affirmative legal duty to protect Plaintiff through the Title IX process and from false allegations, because SCAD encourages students to participate in the process – even going so far as to establish an amnesty policy

136. Instead, at all stages of the Title IX investigation, hearing, and appeal, Defendant has repeatedly ruled against Plaintiff, denied requests by him, retaliated against him, and issued severe sanctions.

137. Defendant preaches, markets, advertises, and makes public on their website that they prioritize the mental health of students.

138.  However, despite this encouragement to prioritize mental health, Defendant had blatant disregard and deliberate indifference to the mental health of Plaintiff.

139.  Rather, Plaintiff faced discrimination, harassment, and overly burdensome sanctions that were severely disproportionate to circumstances in this case.

## **COUNT VI**

### **Failure To Train Employees On The Grievance Policy**

140.  Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

141.  The Title IX Coordinator should provide training to staff, students, and parents on how Title IX protects against sexual harassment and discrimination, with specific training being required for those who serve in specialized roles (e.g., Hearing Officer, Sanctioning Officer, Appeals Officer).

142.  Defendants' failure to train its administrators, employees, hearing officers and sanctioning officers effectively denied Plaintiff of clearly established federal rights and Constitutional rights.

143.  Defendants' failure to train its administrators, employees, hearing officers and sanctioning officers was a breach of SCAD's contractual obligations to Plaintiff.

144. As a direct and proximate result of Defendants' actions, and inactions, John Doe suffered, and continues to suffer, injuries including, but not limited to emotional distress, psychological trauma, and mortification.

## COUNT VII

**Retaliation**

145. Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

146. Enough facts have been alleged, and actually exist, for this Court to plausibly infer that after allegations of sexual assault had been made against him, Plaintiff was subjected to adverse school-related actions (and inactions) with retaliatory motive.

147. This retaliation extended to Plaintiff's advisor-attorney and his advisor-attorney's law partner ("partner")through failure to respond to advisor-attorney and his law partner's requests for accessible case files and access to those files.

148. Further, retaliatory motive existed when the Title IX Coordinator failed to extend even the most basic professional courtesies to Plaintiff's advisor-attorney and his partner and, instead, resorted to passive aggressive terms such as "operational challenges" to refer to advisor-attorney's Christmas leave with

his children and not being able to access the case files remotely or turn around an appeal in three (3) days while on vacation.

149. Retaliation also existed on numerous occasions when the Title IX Coordinator received case correspondence from the partner on the advisor-attorney's behalf, with Plaintiff and advisor-attorney cc'd, and the Coordinator would not respond to the partner and instead would respond to the advisor-attorney directly, removing the partner from the email threads.

150. Retaliatory motive also existed when, notwithstanding the fact that Plaintiff was under a retainer agreement with the advisor-attorney and switching advisors could have caused myriad legal and ethical implications, the Title IX Coordinator stated that Plaintiff could change his advisor. This statement is even more egregious when considering:

    a. It was in response to advisor-attorney and partner's repeated request for partner to access case files and, in this instance, so that a proper appeal could be timely made;

    b. It occurred during the appeals process;

    c. Severe sanctions had already been issued against Plaintiff;

    d. The initial turnaround time was three days;[6]

---

[6] The Title IX Coordinator eventually granted Plaintiff an additional three (3) business days to complete his appeal.

e.  The appeals "clock" started on Dec. 27, 2022, just two days after Christmas (effectively ruining holiday breaks for Plaintiff, advisor-attorney, and the partner);

f.  The Title IX Coordinator was aware of the "operational challenges" faced by the advisor-attorney and knew of the tremendous time crunch on advisor attorney because his vacation end date had been disclosed to the Coordinator. Further, Title IX Coordinator knew that advisor-attorney would have to work on the appeal with little assistance because the Coordinator would not grant case information to the partner.

g.  The statement to "change advisors" was made multiple times, as if to encourage Plaintiff to breach his legal contract with his advisor-attorney.

151.  Retaliation occurred when the Title IX Coordinator, at various stages in this case, either intentionally and/or with reckless or deliberate indifference, caused delays which were unfavorable to Plaintiff.

## COUNT VIII

### Intentional Infliction of Emotional Distress

152.  Plaintiff re-alleges and incorporates the allegations contained in all prior paragraphs of this Complaint as if fully alleged herein.

153.  Defendant's intentional and/or reckless actions in this case have been extreme and outrageous.

154.  Defendant's actions are the cause of Plaintiff's severe emotional distress, psychological trauma, and mortification.

## CONCLUSION

So many clearly outrageous and egregious violations have occurred in this case, against Plaintiff, and against those authorized to assist Plaintiff in accordance with Title IX and SCAD's Sexual Misconduct Policy and Grievance Process.

Because Plaintiff does not have access to the evidence and investigation files against him due to Defendant SCAD's "disappearing ink" case files, there is no evidence that can be offered to this Court other than the items listed on the Motion to File Evidence Under Seal (a Plaintiff's affidavit attesting to the contents of these pleadings being true and accurate, the Hearing Officer Decision, and the Sanctions Officer Decision), but Plaintiff prays that this Court will make all inferences in his favor despite any evidence that cannot be provided.

## PRAYER FOR RELIEF

Plaintiff respectfully prays that the Defendant be served with process and required to answer this lawsuit, and that:

1.  The Plaintiff be allowed to proceed pseudonymously due to the highly sensitive and personal nature of this case;

2.    Removal of all sanctions from Plaintiff, currently and from any permanent record;

3.    Reinstatement of all academic scholarships and privileges;

4.    Plaintiff recover special and general damages from the Defendant for personal injuries which he has suffered in an amount to be determined according to the enlightened conscience of an impartial jury;

     a.   All costs related to participation in the Title IX process and imposing of sanctions;

     b.   All past, present, and future physical and psychological pain, suffering, and impairment; and

     c.   All medical bills, counseling, and other costs and expenses for past, present, and future psychological care.

5.    That Plaintiff be awarded attorney's fees and all costs of litigation;

6.    That Plaintiff be awarded interest at the legal rate on any judgment ultimately rendered;

7.    That Plaintiff be awarded any such other and further relief as this Honorable Court may deem just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury.

    Respectfully submitted this _____ day of _____, 2022.

_/s/ Joseph J. Steffen, Jr._
Attorney for Plaintiff
223 W. York St.
Savannah, GA 31401
(912) 604-4147
joe@joesteffen.com