IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JOHN DOE<br>      *Plaintiff*,<br><br>v.<br><br>THE SAVANNAH COLLEGE OF ART AND DESIGN, INC.; LINDSEY BEACHWOOD, *in her capacity as Deputy Title IX Coordinator*; DAVID BLAKE, *in his capacity as Hearing Officer and Dean of Students*, and BRAD GRANT, *in his capacity as Sanctioning Officer*<br><br>      *Defendants*. | CIVIL ACTION NO.<br>4:23-CV-00013-RSB-CLR |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND <u>PRELIMINARY INJUNCTION</u>**[1]

  Plaintiff John Doe[2] seeks to inject federal judicial review into the middle of an active internal administrative disciplinary process at The Savannah College of Art and Design (SCAD), a private university. Doe was found responsible and sanctioned for a violation of SCAD's policies, but he appealed, as was his right. That appeal is active within SCAD, has not yet been decided, and sanctions are stayed while the appeal is pending. Rather than wait for the process to conclude and exhaust his internal administrative remedies—where one

---

[1] Doe's claims must be resolved through arbitration pursuant to the express terms of an agreement between Doe and SCAD. Because arbitration is the exclusive and binding method for resolving *all* legal disputes between Doe and SCAD, Doe's suit is not properly before this Court. By responding to Doe's Emergency Motion, SCAD does not consent to litigation in this Court and does not otherwise waive any arguments. SCAD intends to file a Motion to Dismiss and to Compel Arbitration in response to Doe's Complaint.

[2] SCAD challenges Plaintiff's use of a pseudonym in this matter and intends to file an opposition to his Motion to Proceed Anonymously/Motion to File under Pseudonym (Doc. 1).

02488426-1

possibility is that Doe prevails, and this entire matter is moot—Doe has filed suit seeking a mandatory preliminary injunction.

Doe's proposed injunctive relief would not preserve the status quo, but would alter it. Injunctive relief would also usurp the conduct process and the rules to which Doe, like every SCAD student, has agreed, and would set a problematic precedent where any student unhappy with the initial decision of a private conduct process could bypass internal appeals, ignore the educational components inherent in a college's disciplinary process, and have our courts act as super-administrators for Georgia's institutions of higher education.

The Court should decline Doe's efforts and allow SCAD's process to play out. As noted, Doe's internal appeal is in progress and he may ultimately be found not responsible (or be entitled to a new process). If so, this matter is effectively (if not actually) moot. If, after the internal appeal, Doe still disagrees with the outcome or sanction, and still believes he has been discriminated against—which SCAD of course denies—he may be able to move forward with a civil action. But to enjoin that process before it is finished, based on the *possibility* of harm, would make our federal courts an "advisory board" for every internal student conduct process. Simply put, there cannot be any irreparable harm when we do not even know what the final outcome is, let alone whether it has caused cognizable harm to Doe.

The Motion for a Temporary Restraining Order and Preliminary Injunction should be denied.

## **BACKGROUND**[3]

This action arises from allegations that Doe sexually assaulted another SCAD student ("Jane Roe") in September 2021. (Motion, Doc. 2 at ¶1.) Pursuant to its policies and

---

[3] Unlike on a motion to dismiss, the allegations in plaintiff's complaint are not entitled to the presumption of truth. On a motion for preliminary injunction, a plaintiff must *prove* with evidence of record—not merely plead—a likelihood of success on the merits. *See, e.g., Advance Am. v. FDIC*, 257 F. Supp. 3d 56, 64 (D.D.C. 2017) (comparing applicable standards).

procedures, SCAD commenced an investigation into Jane Roe's allegations against Doe in August 2022. (Motion, Doc. 2 at ¶2.) The disciplinary process is ongoing.

## I. Relevant Policies and Procedures

The pertinent grievance procedure is set forth in a SCAD document titled *Grievance Process for Sexual Misconduct Policy* (the "Procedure").[4] The Procedure provides a fixed set of steps to be followed when a complaint is made alleging that a student violated SCAD's *Sexual Misconduct Policy* (the "Policy").[5]

After preliminary notices to the parties (the "Complainant" and the "Respondent")—which, among other things, detail the scope of the allegations at issue, offer supportive resources, and outline the procedural steps to be taken—the investigation process begins. (Procedure, Exhibit A, at 2-4.) The investigator gathers evidence, both inculpatory and exculpatory, related to the complaint and affords the parties an opportunity to review and inspect that evidence, together with a draft of the Investigative Report. (Procedure, Exhibit A, at 4-5.) The parties have ten days to respond, in writing, to the evidence; any submissions are then considered by the investigator. (Procedure, Exhibit A, at 5.) Throughout the process, the parties have the right to be accompanied by a single advisor of their choice; this advisor is given access to materials at the same time and in the same way as the parties. (Procedure, Exhibit A, at 2, 5.)

At the conclusion of the investigation, the investigator prepares a final Investigative Report. (Procedure, Exhibit A, at 5.) The Investigative Report "fairly summarizes the relevant evidence." (Procedure, Exhibit A, at 5.) The investigator shares the Investigative Report with both the Complainant and the Respondent, who have an opportunity to respond in writing. (Procedure, Exhibit A, at 5.)

---

[4] A true and correct copy of the Procedure is attached as Exhibit A.

[5] A true and correct copy of the Policy is attached as Exhibit B.

Following the investigation, and with notice to the parties, SCAD convenes a live hearing. (Procedure, Exhibit A, at 5-6.) The Hearing Officer—who cannot be either the investigator or SCAD's Title IX Coordinator—presides over the hearing, which includes an opportunity for the parties to make opening statements, questioning by the Hearing Officer, and cross-examination conducted by the parties' advisors. (Procedure, Exhibit A, at 6.) After the live hearing, the Hearing Officer deliberates and determines by a preponderance of the evidence whether the Respondent violated the Policy. (Procedure, Exhibit A, at 7-8.) If the Respondent is found responsible, the Hearing Officer refers the matter to an independent Sanctioning Officer. (Procedure, Exhibit A, at 7.) The Sanctioning Officer determines sanctions and remedies based upon the severity of the offense. (Procedure, Exhibit A, at 7-8.) The Hearing Officer and Sanctioning Officer each prepare written determinations that are provided to the parties simultaneously. (Procedure, Exhibit A, at 8.)

Either party may appeal the determination of the Hearing Officer within three days of receipt of the written determination. (Procedure, Exhibit A, at 11.) An appeal may be made on the following bases: (1) procedural irregularity that affected the outcome of the matter; (2) new evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and (3) the Title IX Coordinator, investigator, Hearing Officer, or Sanctioning Officer had a conflict of interest or bias that affected the outcome of the matter. (Procedure, Exhibit A, at 10.) The Appeal Officer reviews the record, including any appeal statements from the parties, and issues a written determination describing the outcome of the appeal and the rationale for the result. (Procedure, Exhibit A, at 11.) The appeal decision is provided simultaneously to the parties. (Procedure, Exhibit A, at 11.) The determination regarding responsibility, if it is affirmed by the Appeal Officer, becomes final on the date that SCAD provides the parties with the written determination of the result of the appeal. (Procedure, Exhibit A, at 8.)

## II. The grievance process involving Doe is ongoing.

SCAD's internal disciplinary process involving John Doe is ongoing. (Declaration of John Buckovich, attached as Exhibit C, at ¶4 (Buckovich Decl.)) Doe appealed the written determination regarding responsibility and that appeal is still pending. (Buckovich Decl., ¶¶22-24.) Rather than participate in SCAD's process (which, notably, Doe avers is a contract[6] to which SCAD, and therefore also he, is bound) until completion, Doe has instead sought preemptive injunctive relief.

On August 12, 2022, SCAD student Jane Roe requested an investigation under the Policy and Procedure arising from her allegation that Doe had sexually assaulted her on September 19, 2021 at her private off-campus residence when he continued to penetrate her vagina with his penis after she verbally revoked consent during intercourse. (Buckovich Decl., ¶5.) This conduct, if true, could constitute sexual assault, as defined in the Policy: "Penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the Consent of the victim." (Buckovich Decl., ¶6; *see also* Policy, Exhibit B, at 8.)

As Doe acknowledges, "[a]n investigation [into Roe's complaint that Doe violated the Policy] was conducted by SCAD in accordance with [the Policy and Procedure]." (Motion, Doc. 2 at ¶2.) Both parties had an opportunity to inspect and review the evidence and a draft Investigative Report in an electronic format, as called for by the Procedure. (Motion, Doc. 2 at ¶¶3-4; Procedure, Exhibit A, at 5.) As in all matters arising under the Policy, SCAD used Box.com to share these materials with the parties and their advisors. (Buckovich Decl., ¶9.) This platform allows SCAD to share the information securely and confidentially; parties and their advisors are instructed that they may not duplicate or disseminate the materials. (Buckovich Decl., ¶9.) Neither party offered a response to the evidence or draft report;

---

[6] *See* Complaint, Doc. 1, at ¶¶ 94-95.

consequently, the investigator finalized the Investigative Report and submitted it to SCAD's Title IX Coordinator on November 17, 2022. (Motion, Doc. 2 at ¶¶ 11-12.)

A live hearing was held on December 12, 2022. (Motion, Doc. 2 at ¶ 15.) The Hearing Officer, Executive Director of Career and Alumni Success David Blake (a defendant herein), found Doe responsible by a preponderance of the evidence for violating the Policy. (Buckovich Decl., ¶13.) The matter was thus assigned to a Sanctioning Officer, Sr. VP of Technology & Development Brad Grant (another defendant herein), who assigned the following sanctions to Doe:

 a. Suspension with reenrollment to resume no sooner than fall 2023;

 b. Respondent must submit proof of completion of personal decision-making education prior to reenrollment;

 c. Respondent must submit 1,000-word minimum essay regarding "Informed consent" (with citations) prior to reenrollment; and

 d. The existing "No Contact Order" (NCO) between the parties (Roe and Doe) remains in effect indefinitely.

(Motion, Doc. 2 at ¶ 18; Buckovich Decl., ¶¶14-15.) The Hearing and Sanctioning Officers' determinations were sent to both parties on December 27, 2022. (Motion, Doc. 2 at ¶ 17.) As explained in the Procedure, the parties had three days to submit any appeal. (Procedure, Exhibit A, at 11; Motion, Doc. 2 at ¶ 19.) In response to Doe's advisor's complaints about that timing, SCAD extended the time to appeal from December 30, 2022 to January 5, 2023. (Buckovich Decl., ¶17.)

Rather than submit "a written statement . . . challenging, the outcome," as called for in the Procedure, on January 5, Doe, through his attorney, sent SCAD a copy of the Emergency Motion for Temporary Restraining Order and Preliminary Injunction that he subsequently filed in this Court on January 12. (Buckovich Decl., ¶18.) SCAD in good faith accepted this communication as Doe's request for appeal, notified Roe of the pending appeal, and, on January 18, 2023, designated an Appeal Officer—who is not a SCAD employee, but rather a

private attorney who was formerly the Principal Deputy General Counsel and Acting General Counsel at the U.S. Department of Education—to decide the appeal. (Buckovich Decl., ¶¶19, 22.) Roe opposed the appeal. (Buckovich Decl., ¶21.) Per the Procedure, the Appeal Officer will consider Doe's appeal request, *i.e.*, the motion and accompanying filings, Roe's opposition, and all underlying materials from the investigation and hearing. (Buckovich Decl., ¶23.)

Until the Appeal Officer issues their determination, the finding of responsibility ***is not final*** and the sanctions ***will not be imposed***. (Procedure, Exhibit A, at 8; Buckovich Decl., ¶24.) In fact, Doe is actively enrolled and taking classes at SCAD for the Winter Quarter. (Buckovich Decl., ¶25.) Of course, it is possible that the Appeal Officer will disagree with the Hearing Officer's decision and the finding of responsibility will never become final. (Buckovich Decl., ¶23.) It is also possible that the sanctions are amended in a way that is acceptable to Doe. In other words, Doe's challenge to the outcome of SCAD's internal grievance process—a challenge in which he made the very same claims he is attempting to accelerate for preemptive federal court review—is active. To be consistent with the terms of the exact document he seeks to enforce in this Court, Doe must wait until the grievance process is complete; his attempted end-run around the policies and procedures he agreed to abide by as a student at SCAD should not be countenanced. Put another way – there is no ripe and justiciable dispute between the parties.

## **LEGAL STANDARD**

The issuance of a "preliminary injunction is an '***extraordinary and drastic remedy***.'" *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)) (emphasis added). To prevail on a motion for preliminary injunctive relief, the moving party bears the burden of clearly establishing four prerequisite factors: (1) a substantial likelihood of success on the merits; (2) that irreparable

injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005); *see also Wreal, LLC*, 840 F.3d at 1247 (explaining movant bears the burden of persuasion and must all four prerequisite factors); *Keeton v. Anderson-Wiley, et al.*, 733 F. Supp. 2d 1368, 1375 (S.D. Ga. 2010), *aff'd* 664 F.3d 865 (11th Cir. 2011) ("In considering these four prerequisites, the court must remember that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion.").

The failure to establish *any* factor renders a preliminary injunction inappropriate. *Wreal, LLC*, 840 F.3d at 1248 (Agreeing with District Court that "[b]ecause [the movant] must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms" its motion); *Greco v. NewRez LLC*, No. 1:19-CV-01675, 2019 WL 2713061, at *2 (N.D. Ga. Apr. 15, 2019) ("Because the Court concludes that Plaintiff has failed to establish either a substantial likelihood of success on the merits or an irreparable injury, the Court finds Plaintiff cannot satisfy the standard for injunctive relief. The Court, therefore, denies the request for a TRO.").

While each factor is important, "[a] showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *Georgia v. Pruitt,* 326 F. Supp. 3d 1356, 1366 (S.D. Ga. 2018) ("It is hornbook law that perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." (internal quotation omitted)). Put simply, proof of irreparable harm is "indispensable" and

lack of such proof is fatal to the request for injunctive relief. *Siegel*, 234 F.3d at 1179; *see also Duetz Corp. v. Engine Distribs., Inc.*, No. 1:16-CV-01144, 2018 WL 7198177, at *2 (N.D. Ga. Dec. 7, 2018) (denying request for injunctive relief where movant could not demonstrate irreparable harm); *Casa de Oracion Atlanta, Inc. v. Balvaneda*, No. 1:18-CV-05214, 2018 WL 7953302, at *2 (N.D. Ga. Dec. 14, 2018) (denying motion because "the lack of proof of an irreparable injury dooms a request for injunctive relief."); *Blackerby v. McNeil*, No. CV 307-071, 2008 WL 4089199, at *2 (S.D. Ga. Sept. 2, 2008) (Report & Recommendation) (recommending denial of motion for preliminary injunction because plaintiff could not demonstrate irreparable harm and thus could not "meet his burden of persuasion on all four requisites for preliminary injunctive relief").

"Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176; *see also Snook v. Tr. Co. of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of prevailing because plaintiff failed to meet burden of proving irreparable injury); *City of Jacksonville*, 896 F.2d at 1285 (reversing preliminary injunction based solely on plaintiff's failure to show irreparable injury).

## ARGUMENT

**I. Doe cannot demonstrate that absent injunctive relief he will suffer irreparable harm. His harm is purely speculative.**

To constitute irreparable harm, an injury must be certain and actual. That is, the plaintiff must show that the threat of injury is 'neither remote nor speculative, but actual and imminent.'" *Blackerby*, 2008 WL 4089199, at *2 (quoting *City of Jacksonville, Fla.*, 896 F.2d at 1285); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (explaining, in order to obtain injunctive relief, a plaintiff must show "a real and immediate—

*as opposed to a merely conjectural or hypothetical*—threat of future injury." (emphasis added)); *Duetz Corp.*, 2018 WL 7198177, at *2 (citing *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007)).

Here, there is no imminent, concrete, actual harm because the grievance process is not yet complete: no outcome has been made final; no sanction has been imposed; and Doe continues to take classes and have access to his educational experience at SCAD. In essence, Doe asks this Court to join him in speculating that the Appeal Officer *might* uphold the finding that Doe was responsible for violating the Policy and that Doe *might* be suspended as a result. That is true – he might. But, he might not. The Court must decline Doe's invitation to speculate and deny the relief Doe seeks. *See Dudley v. Boise State Univ.*, No. 1:22-CV-00495-DCN, 2022 WL 17851833, at *8 (D. Idaho Dec. 22, 2022) (declining to grant TRO to student, explaining, "[t]he Court's main concern . . . is that it is being asked to jump into the fray while the [university's conduct] process is ongoing."); *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 864 (S.D. Ohio 2016) (rejecting a request for an injunction to halt a mid-stream disciplinary process, and finding that "[t]o the extent Doe makes any argument about the inadequacy of OSU's process, his argument is unripe"); *B.P.C. v. Temple Univ.*, No. CIV. A. 13-7595, 2014 WL 4632462, at *4 (E.D. Pa. Sept. 16, 2014) (denying to issue preliminary injunction where student disciplinary process had not concluded because harms were speculative in nature and could not meet irreparable harm standard)

The cases Doe cites in support of his argument that "irreparable harm exists" are materially different. (Memo. of Law, Doc 2-2, at 7-8) In each of those cases, the defendant-institution's disciplinary process was *complete* and sanctions were being imposed at the time plaintiff moved for injunctive relief. *See Doe v. Univ. of Conn.*, No. 3:20-CV-92-(MPS), 2020 WL 406356, at *2 (D. Conn. Jan. 23, 2020) (internal conduct process complete, resulting decision final, and enforcement of sanction of suspension imminent); *Doe v.*

*Middlebury Coll.*, No. 1:15-CV-192-JGM, 2015 WL 5488109, at *1 (D. Vt. Sept. 16, 2015) (plaintiff's internal appeal of outcome and sanctions denied; expulsion taking effect at start of upcoming term); *King v. DePauw Univ.*, No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507, at *9 (S.D. Ind. Aug. 22, 2014) (motion for injunctive relief filed three days after internal appeal denied and sanction became effective).

By contrast, SCAD has not imposed, and will not impose, any sanction on Doe until its process concludes, and then will do so only if the outcome and sanctions are upheld by the Appeal Officer. Doe's speculative concern about a hypothetical final outcome does not constitute irreparable harm and so the Motion should be denied. *Siegel*, 234 F.3d at 1179; *Church*, 30 F.3d at 1337.

## II.   Doe is not likely to succeed on the merits.[7]

Doe apparently premises his request for emergency relief on Count II of his Complaint, which alleges that SCAD "breached Title IX and contractual obligations." (Complaint, Doc. No. 1 at ¶¶88-98).[8] In particular, Doe argues in the Motion that "[t]here is a substantial likelihood that Plaintiff will be successful in a preliminary injunction hearing and potential future litigation for violations of its Title IX policies."[9] (Motion, Doc. 2 at 9.). This

---

[7] Because Doe's inability to demonstrate irreparable harm is dispositive, the Court need not consider the other three factors of the injunctive relief standard. *Wilf v. Board of Regents of the Univ. Sys. of Georgia*, No. 1:09-cv-1877-RLV, 2009 WL 10658152, at *1 (N.D. Ga. Sept. 29, 2009) (declining to examine "likelihood of success" factor because plaintiff's request for a preliminary injunction failed on irreparable harm grounds). SCAD nevertheless briefly addresses each of those factors here. SCAD specifically asserts, and does not waive, its position that Plaintiff's claim is unripe and that he has failed to satisfy *any* of the four elements necessary to justify temporary or preliminary injunctive relief.

[8] To the extent Doe now argues that his Motion is also premised on his Title IX "erroneous outcome" claim, which is pleaded as part of Count II of his Complaint, he does so to no avail. Doe cannot assert an erroneous outcome claim under Title IX when there has **been no outcome**.

[9] Doe does twice reference "procedural due process," *see, e.g.,* Memo. of Law, Doc. 2-2, at 9, 17, however, Doe asserts no procedural due process claim in his complaint. This is, of course, because SCAD is a private institution not subject to constitutional challenges. *See id.* at 5.

argument is not supported by the facts or the law. Doe's request for emergency relief fails on the merits for three primary reasons.

**First**, Doe's claim fails to present a live case or controversy and is not ripe for decision. "For the controversy to be ripe, the complained-of injury must be immediate or imminently threatened. . . . When determining ripeness, a court asks whether this is the correct time for the complainant to bring the action. *Wilderness Soc. v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996); *see also Warshak v. U.S.*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) ("A claim is not 'amenable to . . . the judicial process,' when it is filed too early (making it unripe).") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). As detailed above, the Appeal Officer has not yet decided Doe's appeal and so the finding of responsibility is *not final*, no sanctions have been imposed, and Doe continues his studies at SCAD. In the absence of a final decision determining Doe violated the Policy and imposing a significant sanction, there is no ripe claim to be adjudicated. Instead, Doe presents only an abstract question: *assuming* the finding of responsibility stands, and *further assuming* that SCAD imposes a sanction as a result, would any alleged defects in the process by which those decisions were made constitute a breach of contract? This hypothetical question is not ripe for review. *See, e.g., Doe v. The Ohio State University*, 136 F. Supp. 3d 854, 864-65 (S.D. Ohio 2016) (denying injunctive relief where the investigation was at an early stage, with no adverse finding against the plaintiff, the claim was not ripe for disposition); *B.P.C.*, 2014 WL 4632462, at *2 (same); *Morriem v. The Univ. of Tennessee*, No. 12–2891-STA-DKV, 2013 WL 5673619, at *12 (W.D. Tenn. 2013) (dismissing for lack of ripeness claim that university was seeking to strip plaintiff of tenure in violation of the due process clause, noting that while university had initiated proceedings which could lead to a loss of tenure, *no actual decision had been made*.).

***Second***, Doe entered into an Alternative Dispute Resolution Policy and Agreement (ADRPA) with SCAD that requires dismissal of his claims.[10] The ADRPA "involves an internal review, mediation, and binding arbitration to resolve ***all legal disputes*** that may arise between SCAD and a student."[11] (ADRPA, Exhibit D, at 36 (emphasis added)). Doe is legally bound to mediate and, if necessary, arbitrate any claims against SCAD pursuant to the ADRPA. For this reason, too, he cannot succeed on the merits of his claims in this court.

***Third***, while Doe frames his claims as rooted in breach of contract—claiming the still-pending disciplinary process included "portions . . . in violation of SCAD's own policies" (Declaration, Doc. 2-1, at ¶4)—he does not actually identify any procedural step or protection to which he was entitled, but was denied. Instead, Doe and his attorney express displeasure at terms of the Procedure and the not-final outcome. *See, e.g.*, Mem. of Law, 2-2, at 11 (Policy and Procedure should, but do not, include a definition Doe favors); *id.* at 14 (hearing officer did not agree with Doe's version of the facts). Doe has not pleaded that SCAD departed from its procedures—put differently: he has not pleaded a material breach of the terms of a contract—and so his claim will fail. *See Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (explaining that, in Georgia, there are three essential elements to state a claim for breach of contract: (1) a valid contract, (2) a material breach of the contract's terms, and (3) damages resulting from the breach); *see also, e.g.*, *Bray v. Worcester Polytechnic Inst.*, 540 F. Supp. 3d 94, 102 (D. Mass. 2021) (declining to issue injunction where student's breach of contract claim was premised on fact that he "simply disagree[d]" with conduct decision); *Doe v. The Univ. of South Alabama*, No. CV 17-0394-CG-C, 2017 WL 3974997, at *4 (S.D. Ala. Sept. 08, 2017) (finding plaintiff failed

---

[10] As noted above, SCAD intends to file a Motion to Dismiss and to Compel Arbitration in response to Doe's Complaint.

[11] A true and correct excerpt of the SCAD Student Handbook containing the *Alternative Dispute Resolution Policy and Agreement* is attached as Exhibit D.

to show a substantial likelihood of success where "Defendants arguably followed all of South Alabama's policies and procedures.").[12]

### III. Both SCAD and the claimant will be harmed if Doe's requested relief is granted.

In considering this factor, the court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 1803, 72 L.Ed. 2d 91 (1982) (*quoting Yakus v. United States*, 321 U.S. 414, 440, 64 S. Ct. 660, 675, 88 L.Ed. 834 (1944)). Here, that balance favors SCAD.

Institutions of higher education, like SCAD, have an interest in regulating their student bodies, including by investigating and disciplining, when appropriate, students for sexual misconduct. *Doe v. Ohio State Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016) (noting university's prerogative to investigate and discipline misconduct); *Bonnell v. Lorenzo*, 241 F.3d 800, 822 (6th Cir. 2001) ("A college's or university's interest in maintaining a hostile-free learning environment, particularly as it relates to its Title IX funding, is well recognized."); *accord Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000) ("Schools, of course, have an "unquestionably powerful interest in maintaining the safety of their campuses.").

Absent some compelling reason, the "independence of institutions of higher education" in this regard should not be "undermined." *Wilf v. Bd. of Regents of the Univ. Sys. of Georgia*, No. 1:09-CV-1877-RLV, 2009 WL 10658152, at *3 (N.D. Ga. Sept. 29, 2009) (denying motion for preliminary injunction because, *inter alia*, plaintiff offered no "compelling reason to intervene in the internal affairs of an institution of higher learning.").

---

[12] To be certain, Doe's breach of contract and Title IX claims have no merit. While Doe might disagree with the Hearing Officer's decision and the severity of the sanctions imposed, SCAD is confident that the Policy and Procedure were followed at each step of the process. When Doe's claims are ripe for determination (if not rendered moot by the Appeal Officer's finding, which may yet make changes to either the decision or sanctions), SCAD believes it will be vindicated when those claims are arbitrated.

Here, forcing SCAD to abandon its procedures midstream, before a final decision, diminishes the integrity of that process, and SCAD's ability to enforce its process in this and other cases. *See Knoch v. Univ. of Pittsburgh*, No. 2:16-CV-00970-CRE, 2016 WL 4570755, at *9 (W.D. Pa. Aug. 31, 2016) (while acknowledging benefit to plaintiff of injunction, weighing factor in favor of university because the interference would "cause greater harm to the University's ability to discipline its students accused of misconduct without resorting to judicial intervention and its ability to protect its students from harmful conduct and maintain order on campus"); *Marshall v. Ohio Univ.*, No. 15-cv-775, 2015 WL 1179955, at *10 (S.D. Ohio Mar. 13, 2015) (explaining that "[i]ssuing a temporary restraining order . . . would likely interfere with [the University's] ability to enforce its disciplinary standards"). It would set a troubling precedent for students to believe they can bypass the internal conduct process—a process to which they agreed as a student—in favor of judicial relief.

Finally, Doe is not the only student with interests in the outcome of this proceeding, and any harm to Doe must also be balanced against the harm to the Complainant, Roe, who is entitled to see SCAD's process, as outlined in the Procedures, taken through to completion.

**IV.     Doe has not demonstrated that the relief he seeks is in the public interest.**

Public interest favors allowing SCAD to carry out its own conduct proceedings:

> [A]n educational institution's authority to make disciplinary decisions without having to resort to court intervention is a substantial public interest. Requiring so would substantially weaken the institution's legitimate disciplinary authority among its students and be detrimental to the public interest, as educational institutions encourage their students to conduct themselves as model citizens in adhering to any applicable code of conduct.

*Knoch*, 2016 WL 4570755, at *9. Moreover, "allegations of sexual harassment inherently address a matter of public concern . . . because of the public interest in knowing that such goings on are properly investigated and not allowed to continue in any given arena." *Bonnell*, 241 F.3d at 826. Consequently, "granting a temporary restraining order would likely disturb the University's ability to enforce its disciplinary procedures, which would not be in the

public interest." *Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, 2015 WL 5729328, at *3 (S.D. Ohio Sept. 30, 2015; *see also Marshall*, 2015 WL 1179955, at *10 ("Issuing a temporary restraining order in this case, and in others similar to it, would likely interfere with OU's ability to enforce its disciplinary standards").

## CONCLUSION

For the foregoing reasons, and any other reasons that may appear to the Court, Defendants respectfully request that the Court deny Plaintiff's request for injunctive relief.


Dated: January 26, 2023             */s/ Catherine M. Banich*
                                     Catherine M. Banich
                                     GA Bar No. 260514
                                     **TAYLOR ENGLISH DUMA LLP**
                                     1600 Parkwood Circle, Suite 200
                                     Atlanta, GA 30339
                                     (770) 434-6868 Telephone
                                     cbanich@taylorenglish.com

                                     -and-

                                     James A. Keller
                                        (*pro hac vice admission to be sought*)
                                     Amy L. Piccola
                                        (*pro hac vice admission to be sought*)
                                     **SAUL EWING LLP**
                                     Centre Square West
                                     1500 Market Street, 38th Floor
                                     Philadelphia, PA 19102

                                     *Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN DOE | : | CIVIL ACTION NO. |
| *Plaintiff*, | : | 4:23-CV-00013-RSB-CLR |
| v. | : | |
| THE SAVANNAH COLLEGE OF ART AND DESIGN, INC.; LINDSEY BEACHWOOD, *in her capacity as Deputy Title IX Coordinator*; DAVID BLAKE, *in his capacity as Hearing Officer and Dean of Students*, and BRAD GRANT, *in his capacity as Sanctioning Officer* | : | |
| *Defendants*. | : | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day filed a copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system, which will serve a copy by electronic mail to all counsel of record.

Respectfully submitted this 26th day of January, 2023.

/s/ *Catherine M. Banich*
Catherine M. Banich
Georgia Bar No. 260514
cbanich@taylorenglish.com

*Attorney for Defendants*

02488426-1